STATE v. REID

[148 N.C. App. 548 (2002)]

_____

STATE OF NORTH CAROLINA v. ROBERT ANDERSON REID

No. COA00-1538

(Filed 5 February 2002)

**Motor Vehicles— DWI—suspension of commercial license— double jeopardy—noncommercial DWI offense**

Defendant's conviction for DWI did not constitute double jeopardy where his commercial driver's license had been suspended for thirty days and he was refused a limited commercial driving privilege. Double jeopardy will attach only when a defendant is forced to defend multiple criminal punishments for one offense; driver's license revocations are civil rather than criminal. Although defendant argued that he was denied his right to earn a livelihood, the state has a greater public safety interest in commercial drivers because of the greater risk of harm. U.S. Const. Amend. V; N.C. Const. Art. I, § 19.

Appeal by defendant from judgment entered 25 April 2000 by Judge Orlando F. Hudson in Wake County Superior Court. Heard in the Court of Appeals 9 January 2002.

**STATE v. REID**

[148 N.C. App. 548 (2002)]

*Roy Cooper, Attorney General, by Isaac T. Avery, III, Special Deputy Attorney General, and Patricia A. Duffy, Assistant Attorney General, for the State.*

*Tharrington Smith, L.L.P., by F. Hill Allen for defendant-appellant.*

THOMAS, Judge.

Defendant, Robert Anderson Reid, appeals from a conviction of impaired driving. He argues that the revocation of his commercial driver's license for a thirty-day period prior to trial and his disqualification from obtaining a commercial limited driver's privilege during that time resulted in double jeopardy.

The State's evidence tended to show the following: On 23 April 1999 at approximately 3:20 a.m., Trooper Donald Pate (Pate) of the North Carolina Highway Patrol observed a Nissan automobile traveling at a high rate of speed.

After clocking the vehicle at 90 m.p.h., Pate pulled it over, and found defendant to be the operator. Defendant's eyes were bloodshot and glassy and Pate smelled a strong odor of alcohol coming from him. Pate then asked defendant to perform field sobriety tests. Based in part on defendant's performance, Pate arrested him for driving while impaired (DWI).

Pate drove defendant to the City/County Bureau of Identification for an Intoxilyzor 5000 test. Defendant's alcohol concentration was 0.10.

At the close of the State's evidence, defendant's motions to dismiss due to insufficiency of the evidence and on double jeopardy grounds were denied. The basis for defendant's double jeopardy argument was what occurred regarding his commercial driver's license after being charged with DWI. That license, as well as his personal driver's license, was revoked for a thirty-day period. Defendant then filed petitions for personal and commercial limited driving privileges. He received the personal limited driving privilege. His request for a commercial limited driving privilege was refused, however, based on a lack of statutory authority. After the thirty-day period, defendant's commercial driving privilege was reinstated upon the payment of a fifty-dollar restoration fee to the North Carolina Department of Motor Vehicles.

Defendant did not testify and did not offer evidence. The jury returned a guilty verdict and the trial court, determining defendant was a Level V offender, entered a suspended sentence.

By defendant's first and second assignments of error, he argues the thirty-day revocation of his commercial driver's license without the availability of a limited commercial license is "punishment." The subsequent prosecution for DWI, he contends, violates the federal double jeopardy clause of the Fifth Amendment to the U.S. Constitution and the North Carolina Law of the Land clause. We disagree.

The double jeopardy clause protects against a second prosecution for the same offense after an acquittal or conviction and protects against multiple punishments for the same offense. U.S. Const. Amend. 5. It is applicable to the states based on the Fourteenth Amendment's due process clause. The Law of the Land clause of the North Carolina Constitution incorporates similar protections.

> No person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land. No person shall be denied equal protection of the laws; nor shall any person be subjected to discrimination by the State because of race, color, religion, or national origin.

N.C. Const. Art. I, § 19. Our Supreme Court has noted that "[i]t is a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence, that no person can be twice put in jeopardy of life or limb for the same offense . . . . While the principle is not stated in express terms in the North Carolina Constitution, it has been regarded as an integral part of the 'law of the land' within the meaning of [this section]." *State v. Crocker*, 239 N.C. 446, 80 S.E.2d 243 (1954).

The General Statutes provide, in pertinent part:

(b) Revocations for Persons Who Refuse Chemical Analyses or Who Are Charged With Certain Implied-Consent Offenses. —A person's driver's license is subject to revocation under this section if:

(1) A charging officer has reasonable grounds to believe that the person has committed an offense subject to the implied-consent provisions of G.S. 20-16.2;

(2) The person is charged with that offense as provided in G.S. 20-16.2(a);

(3) The charging officer and the chemical analyst comply with the procedures of G.S. 20-16.2 and G.S. 20-139.1 in requiring the person's submission to or procuring a chemical analysis; and

(4) The person:

    a. Willfully refuses to submit to the chemical analysis;

    b. Has an alcohol concentration of 0.08 or more within a relevant time after the driving;

    c. Has an alcohol concentration of 0.04 or more at any relevant time after the driving of a commercial motor vehicle; or

    d. Has any alcohol concentration at any relevant time after the driving and the person is under 21 years of age.

N.C. Gen. Stat. § 20-16.5(b) (1999). However, in *State v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996), our Supreme Court held that the then ten-day revocation under section 20-16.5 and restoration fee constituted a remedial highway safety measure rather than punishment. The *Oliver* court further stated that "[a]n impaired driver presents an immediate, emergency situation, and swift action is required to remove the unfit driver from the highways in order to protect the public." *Id.* at 209, 470 S.E.2d at 21.

In *Hudson v. United States*, 522 U.S. 93, 99, 139 L. Ed. 2d 450, 458 (1997), the U.S. Supreme Court utilized factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 9 L. Ed. 2d 644 (1963), to determine whether a civil penalty was punitive. The factors include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has been historically regarded as punishment; (3) whether the sanction comes into play only upon a finding of scienter; (4) whether the operation of the sanction will promote the traditional aims of punishment, retribution and deterrence; (5) whether the behavior to which the sanction applies is already a crime; (6) whether an alternative purpose to which the sanction may be rationally connected is assignable to it; and (7) whether the sanction appears excessive in relation to the alternative purpose assigned. *Id.*

In *State v. Evans*, 145 N.C. App. 324, 550 S.E.2d 853 (2001), this Court utilized these factors to conclude that section 20-16.5 is

not punitive. The Evans court stated that "the function and intent of [section 20-16.5] is to remove from our highways drivers who either cannot or will not operate a motor vehicle safely and soberly. The purpose of [the] license revocation [is] to prevent unsafe and unfit drivers from operating vehicles and endangering the citizens of North Carolina."

Defendant contends his case is distinguishable, however, in that it was his commercial license that was affected, which denied his "very right to earn a livelihood for that 30-day period." He asserts that his commercial driving privilege was wrongfully affected since he was operating a non-commercial vehicle at the time of the offense. However, the U.S. Supreme Court, in *Seling v. Young*, 531 U.S. 250, 267, 148 L. Ed. 2d 734, 737 (2001), held that "[a]n Act found to be civil cannot be deemed punitive 'as applied' to a single individual in violation of the Double Jeopardy . . . clause" because the impact on a single defendant is irrelevant in a double jeopardy analysis. In total, the *Evans* analysis as to the seven factors is applicable here.

Defendant also argues that the U.S. Supreme Court holding in *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767 (1994), serves to bar his trial because of the license revocation. Even if we had held the revocation here to be punishment, which we do not, whether that would have automatically implicated *Kurth Ranch* is not settled since the ostensibly civil proceeding came prior to the criminal proceeding. The U.S. Supreme Court, in *Kurth Ranch* "specifically noted that 'the statute here does not raise the question whether an ostensibly civil proceeding *that is designed to inflict punishment* may bar a subsequent proceeding that is admittedly criminal in character.' " *Vick v. Williams*, 233 F.3d 213, 218 (4th Cir., 2000), *cert. den.*, 533 U.S. 952, 150 L. Ed. 2d, 754 (2001) (emphasis added). According to *Vick*, the U.S. Supreme Court "specifically reserves the question of whether that [civil] punishment would bar a subsequent criminal proceeding." *Id.*

The safety and remedial purposes of the statute are clear. Regardless of the type of vehicle being driven at the time of the offense, a driver unwilling or unable to conform to the motor vehicle laws is a danger to other citizens on the road. Moreover, we note defendant's Class A commercial driver's license enabled him to operate any Class A motor vehicle. *See* N.C. Gen. Stat. § 20-37.16(b)(1) (1999). The classes of motor vehicles are solely based on the weight of the vehicle. Section 20-4.01 provides, in pertinent part:

(2a) Class A Motor Vehicle.—A combination of motor vehicles that meets either of the following descriptions:

a. Has a combined GVWR of at least 26,001 pounds and includes as part of the combination a towed unit that has a GVWR of at least 10,001 pounds.

b. Has a combined GVWR of less than 26,001 pounds and includes as part of the combination a towed unit that has a GVWR of at least 10,001 pounds.

(2b) Class B Motor Vehicle.—Any of the following:

a. A single motor vehicle that has a GVWR of at least 26,001 pounds.

b. A combination of motor vehicles that includes as part of the combination a towing unit that has a GVWR of at least 26,001 pounds and a towed unit that has a GVWR of less than 10,001 pounds.

(2c) Class C Motor Vehicle.—Any of the following:

a. A single motor vehicle not included in Class B.

b. A combination of motor vehicles not included in Class A or Class B.

N.C. Gen. Stat. § 20-4.01(2a); (2b); and (2c) (1999). A Class A commercial driving privilege encompasses some of the largest vehicles on the road. Defendant stated that driving a larger vehicle requires greater skill and that there are more stringent requirements to get a commercial driver's license. *See* Art. 2C of Chapter 20 of the N.C. General Statutes. We thus believe the state has a greater interest in the public's safety regarding commercial drivers because there exists a greater risk of harm. A personal driver's license has been held to be a privilege. *See State v. Evans*, 145 N.C. App. 324, 550 S.E.2d 853 (2001); *Eibergen v. Killens*, 124 N.C. App. 534, 477 S.E.2d 684 (1996). A commercial driver's license is an extraordinary privilege which carries with it additional responsibilities.

Driver's license revocations are civil, not criminal, proceedings. *See State v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996); *Seders v. Powell*, 298 N.C. 453, 259 S.E.2d 544 (1979). Double jeopardy will attach only when a defendant is forced to defend himself from multiple *criminal* punishments for one offense.

Accordingly, the revocation of defendant's commercial license for thirty days accompanied by a disqualification for a limited commercial driver's license was not akin to criminal punishment. It was the exercise of reasonable regulatory authority designed for an appropriate public purpose. Defendant's later conviction for DWI did not constitute double jeopardy.

NO ERROR.

Judges WYNN and HUDSON concur.